Filed 8/10/18; pub. order 8/24/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRANCHES NEIGHBORHOOD CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CALATLANTIC GROUP, INC.,<br><br>    Defendant and Respondent. | G055201<br><br>(Super. Ct. No. 30-2017-00913469)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Glenda Sanders, Judge.  Affirmed.

Fenton Grant Mayfield Kaneda & Litt, Gregory S. Lew and Daniel H. Glifford for Plaintiff and Appellant.

Plante Lebovic, Brian C. Plante and Gregory M. Golino for Defendant and Respondent.

*          *          *

Plaintiff Branches Neighborhood Corporation (Branches or the association), a community association incorporated pursuant to the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000, et seq.)[1] (the Act), filed an arbitration claim against the association's developer, defendant CalAtlantic Group, Inc., formerly known as Standard Pacific Corp. (Standard), for construction defects. The arbitrator granted summary judgment in Standard's favor, concluding the association did not receive the consent of its members to file the claim until after the claim was filed, in violation of its declaration of Covenants, Conditions and Restrictions (CC&Rs). The trial court subsequently denied the association's motion to vacate the award, concluding the court had no power to review the arbitrator's decision.

Branches argues on appeal that the trial court incorrectly denied its motion to vacate because the arbitrator exceeded its powers by abridging an unwaivable statutory right or public policy. We find no such right or policy, and accordingly, the plain language of the CC&Rs controls. We therefore affirm the judgment.

I

FACTS

Branches is located in Ladera Ranch and consists of residential condominium units. Its operation is subject to both the provisions of the Act and its own CC&Rs. Standard was the builder, as defined by the Act. (§ 911.)

In October 2014, Branches gave notice to Standard under section 910, stating that it intended to make a claim for construction and design defects. Branches requested that Standard provide relevant plans and specifications within 30 days, and provided a preliminary list of defects. The listed defects were wide-ranging, including problems impacting both individual units and the common area.

---

[1] Subsequent statutory references are to the Civil Code unless otherwise indicated.

2

In March 2015, the parties entered into a stipulation to engage in the prelitigation procedures set forth in the Act. (§ 6000.) Jim Roberts, an attorney, was designated as mediator and dispute resolution facilitator. The parties agreed to a list of steps, including joint site inspections and testing, production of documents by each side, preparation of expert reports, creation of a more detailed defect list, and ultimately, mediation and a settlement meeting. The parties were ultimately unsuccessful, and the prelitigation procedures ended in November 2015.

On January 12, 2016, Branches filed a demand for arbitration with Judicial Arbitration and Mediation Services. The claim alleged various construction defects and sought in excess of $5 million in damages, alleging strict liability, breach of warranties, negligence, statutory liability, and various other theories. The Honorable James Smith, a retired judge, was appointed to serve as arbitrator.

At an initial conference, the arbitrator ordered Branches to file a short statement of the factual basis for each claim being asserted, and directed the parties to meet and confer about a case management order. On May 31, Branches served a revised demand for arbitration that included the short statement the arbitrator had ordered. Standard subsequently served an answer. Among many other defenses, Standard asserted Branches had failed to comply with the CC&Rs: "Respondent is informed and believes based thereon alleges that Claimant failed to comply with numerous provisions in the CC&Rs, including but not limited to, section 12.4.2 (obtaining the vote or written consent of 51 % [of] Claimant's members prior to initiating a construction defect claim) . . . ."

In late June, the arbitrator filed a case management order, governing discovery and prehearing motions, and set a tentative timeline for the arbitration for "sometime after May 8, 2017."

Standard propounded interrogatories to Branches, which provided responses on August 22. Question No. 1 asked if Branches had obtained the written vote or written consent of no less than 51 percent of the members before serving Standard

3

with notice in October 2014.  Branches provided rather boilerplate objections, but ultimately answered:  "No."  It provided the same answer to the next question, which asked whether it had received a vote or consent of at least 51 percent of the members prior to commencing arbitration.  Branches again answered "[n]o," after stating its objections to the question.

On October 20, Branches held a membership meeting.  According to the declaration of the property manager, 93 of 173 members appeared in person or by proxy, constituting a quorum under the association's bylaws.  The membership was asked to either "1) Approve and ratify the prosecution of the construction defect claim against . . . [Standard]; or 2) Disapprove the prosecution of the construction defect claim against . . . [Standard]."  Of the 93 members present in person or by proxy, 92 voted to ratify.

On November 1, Standard filed a motion for summary judgment based on the association's "failure to obtain the requisite vote or written consent of the Owners who represent not less than fifty-one percent (51%) of the [association's] voting power, which is a condition precedent to bringing this action."  Standard argued that section 12.4.2 of the CC&Rs requires a vote prior to filing the claim.  That section states: "**Required Vote to Make Claim**.  Prior to filing a claim pursuant to the ADR Provisions, the Neighborhood Corporation must obtain the vote or written consent of Owners other than Neighborhood Builder who represent not less than fifty-one percent (51%) of the Neighborhood Corporation's voting power (excluding the voting power of Neighborhood Builder."[2]  Branches filed an opposition, to which Standard replied.

---

[2] The referenced "ADR Provisions" state that any "dispute" is governed by the arbitration provisions in the home or common property warranties.  "Dispute" is defined as "any and all actions or claims between any Neighborhood Builder party on the one hand and any Owner and/or the Neighborhood Corporation on the other hand arising out of or in any way relating to the Neighborhood, any real property or Improvements in the Neighborhood . . . the Common Property Warranty, and/or any other agreements or duties or liabilities as between any Neighborhood Builder party and any Owner and/or the Neighborhood Corporation relating to the sale or transfer of the Condominiums or the

4

The arbitrator heard argument on the matter, and on January 12, 2017 issued a case management order granting Standard's motion. It was undisputed, the order stated, that the requisite consent of the membership had not been obtained prior to starting arbitration proceedings, as was the relevant language in the CC&Rs. The arbitrator concluded that the October ratification vote was insufficient. "The effect of the ratification Vote is nothing more than an indication by the voting owners that on October 12, 2016 they approved the action of the Association in filing the Demand for Arbitration. This after the fact expression of consent cannot be transmuted into the prior consent required by the CC&Rs. This is particularly so when such a result would adversely impact the rights of a party to the agreement by which the CC&Rs were created. The Developer is such a party." The arbitrator also rejected Branches' contentions that the CC&R provision was unenforceable, that enforcing it in the present context would be unconscionable, or that Standard had no standing to enforce it. The arbitrator subsequently denied a motion for reconsideration or a new trial.

In April 2017, Standard filed a motion to confirm the arbitration award. Branches filed a combined response to Standard's motion and a petition to vacate, arguing the arbitrator had exceeded his powers by depriving Branches of its statutory rights. The parties extensively briefed the issue and the trial court heard the parties' arguments.

The trial court granted the motion to confirm and denied the motion to vacate, finding the arbitrator had not exceeded his powers.

---

Common Property, or regarding the use or condition of the Condominiums and/or the Common Property, or the design or construction of or any condition on or affecting the Neighborhood and/or any Condominium and/or the Common Property in the Neighborhood, including without limitation construction defects . . . ."

## II

## DISCUSSION

*Statutory Scheme and Standard of Review*

"The California Arbitration Act (CAA; [Code Civ. Proc.,] § 1280 et seq.) 'represents a comprehensive statutory scheme regulating private arbitration in this state.'" (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 10; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) Under the CAA, "[t]he scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards. [Citations.] An arbitrator's decision generally is not reviewable for errors of fact or law." (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33; see *Moncharsh*, *supra*, 3 Cal.4th at p. 11.) This is true even when the "error appears on the face of the award and causes substantial injustice to the parties." (*Id.* at p. 6.)

Judicial review of an arbitration award is ordinarily limited to the statutory grounds for vacating an award under Code of Civil Procedure section 1286.2 or correcting an award under Code of Civil Procedure section 1286.6. (*Moncharsh*, *supra*, 3 Cal.4th at pp. 12-13; *Sunline Transit Agency v. Amalgamated Transit Union, Local 1277* (2010) 189 Cal.App.4th 292, 302-303.)

There are, however, certain "narrow exceptions" to the general rule of arbitral finality. (*Moncharsh*, *supra*, 3 Cal.4th at p. 11.) Branches advances one of those exceptions here, specifically, that the arbitrator exceeded his powers. We discuss this in detail below.

As for the relevant standard of review, "[t]o the extent the trial court made findings of fact in confirming the award, we affirm the findings if they are supported by substantial evidence. [Citation.] To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo. [Citation.] [¶] We apply a highly deferential standard of review to the award itself, insofar as our inquiry

6

encompasses the arbitrator's resolution of questions of law or fact.  Because the finality of arbitration awards is rooted in the parties' agreement to bypass the judicial system, ordinarily '"[t]he merits of the controversy between the parties are not subject to judicial review." [Citations.]' [Citation.]" (*Cooper v. Lavely & Singer Professional Corp.*, *supra*, 230 Cal.App.4th at pp. 11-12.)  Because the issue of whether the arbitrator exceeded his powers is a legal question based on undisputed facts, our review on that point is de novo.  (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn.1 (*Richey*).)

*The Pertinent Exception to the Rule of Finality*

Code of Civil Procedure section 1286.2, subdivision (a)(4), states that the trial court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

"Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey*, *supra*, 60 Cal.4th at p. 916.)[3]  This departure from the general rule applies only in "limited and exceptional circumstances." (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.)  "'Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error . . . .'" (*Cable Connection, Inc. v. DIRECTTV, Inc.* (2008) 44 Cal.4th 1334, 1360.)  "Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground.  The reason is clear:  the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards . . . .  Absent a clear expression of illegality or public policy undermining this strong

---

[3] In the interests of brevity, we refer to this as the "unwaivable right exception," although it encompasses both unwaivable statutory rights and public policy.

presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.)

"[E]valuating a challenge to an arbitration award is a two-step process— first the court must determine whether the award is reviewable, and only if review is appropriate does the court consider whether the award should be upheld." (*SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 621-622 (*SingerLewak*).) "The threshold question here, then, is whether according the arbitration award finality would be inconsistent with protecting [respondent's] statutory rights." (*Id.* at p. 622.)

The right that Branches claims applies here is the "right" to ratify the association's actions; it claims this is not conferred by a single statute, but by several statutes. Because the arbitrator misconstrued these statutes and denied the association this "right," the association claims, the arbitrator exceeded the scope of his powers.

To shed some light on this subject, we examine cases where an arbitrator was found to have exceeded his or her powers on this basis. *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 (*Pearson Dental*), involved an arbitration award rejecting an employee's statutory employment claims as time-barred. The court held the arbitrator clearly erred in concluding the employee's claims were time-barred, and that error was reviewable because the arbitration involved unwaivable statutory claims and the legal error deprived the employee of a hearing on the merits. (*Id.* at p. 675.) "We held that when 'an employee subject to a mandatory employment arbitration agreement is unable to obtain a hearing on the merits of his FEHA claims, or claims based on other unwaivable statutory rights, because of an arbitration award based on legal error, the trial court does not err in vacating the award.' [Citation.]" (*Richey*, *supra*, 60 Cal.4th at p. 918.)

In *Richey,* the California Supreme Court went on to recognize the limited application of the unwaivable right exception: "The arbitrator [in *Pearson Dental*] 'misconstrued the procedural framework under which the parties agreed the arbitration

8

was to be conducted, rather than misinterpreting the law governing the claim itself" [citation], a distinction that explained the narrow application of our holding and one that also guides the scope of our review here. *Pearson Dental* emphasized that its legal error standard did not mean that all legal errors are reviewable. [Citation.] The arbitrator had committed clear legal error by (1) ignoring a statutory mandate, and (2) failing to explain in writing why the plaintiff would not benefit from the statutory tolling period." (*Richey*, *supra*, 60 Cal.4th at p. 918.)[4]

In *SingerLewak*, *supra*, 241 Cal.App.4th 610, the court rejected the claim that the unwaivable right exception applied. The case involved the enforcement of a noncompete clause in a partnership agreement. (*Id.* at p. 614.) The arbitrator concluded the defendant was a partner, thus defeating the defendant's argument that Business and Professions Code section 16602, which prohibits noncompete clauses for most employees, did not apply to him. In the trial court, the defendant opposed a motion to confirm the award in the plaintiff's favor, arguing the award was illegal and violated public policy. (*Id.* at p. 615.)

The Court of Appeal disagreed, finding that although the restraint on noncompete clauses constitutes an unwaivable statutory right, the statutory scheme in the Business and Professions Code itself created an exception to the policy. (*SingerLewak*, *supra*, 241 Cal.App.4th at p. 624.) "[T]he arbitration award, even if legally erroneous,

[4] Despite the California Supreme Court's useful discussion of the exception, the facts of *Richey* itself are not helpful to our analysis, as the case ultimately turned on the lack of prejudicial error. In *Richey*, the court was reviewing an appeal under the California Family Rights Act (CFRA). (Gov. Code, §§ 12945.1, 12945.2.) The arbitrator had rejected an employee's claim for reinstatement under the CFRA, relying on a federal defense previously untested in California. The trial court confirmed the award, but the Court of Appeal reversed, concluding the arbitrator had violated the employee's statutory right to reinstatement when he applied the federal defense to the employee's claim. (*Richey*, *supra*, 60 Cal.4th at pp. 912, 915.) The California Supreme Court reinstated the award on the alternate ground that the employee had not demonstrated that applying the federal defense was prejudicial. (*Id.* at p. 920.)

did not contravene a public policy indicating that certain issues not be subject to resolution by the arbitrator.  [Citation.]"  (*Ibid.*)  Further, "[i]n contrast to *Pearson*, any arbitrator error did *not* '[misconstrue] the procedural framework under which the parties agreed the arbitration was to be conducted, rather than misinterpreting the law governing the claim itself.'  [Citation.]  Indeed, [the defendant's] argument is precisely that the arbitrator misinterpreted the law governing the claim itself."  (*Ibid.*)

Recent case law, therefore, stands "for the proposition that where an arbitrator's decision has the effect of violating a party's statutory rights or well-defined public policies—particularly those rights and policies governing the conduct of the arbitration *itself*—that decision is subject to being vacated or corrected."  (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 765.)  The question, then, is whether that principle applies to the instant case.

*"Unwaivable Statutory Right"*

Branches first asserts, without supporting authority, that section 12.4.2 of the CC&Rs "conflicts with governing statutes, and is, for that reason, unenforceable." The CC&Rs language is clear:  "**Required Vote to Make Claim**.  Prior to filing a claim pursuant to the ADR Provisions, the Neighborhood Corporation must obtain the vote or written consent of Owners other than Neighborhood Builder who represent not less than fifty-one percent (51%) of the Neighborhood Corporation's voting power (excluding the voting power of Neighborhood Builder."  Unless Branches can provide legal authority why that clause should not be given effect, the plain language of the CC&Rs controls. (*Franklin v. Marie Antoinette Condominium Owners Assn.* (1993) 19 Cal.App.4th 824, 829.)

Branches turns to a number of statutes which it claims give it the "statutory right" to use ratification as an alternate method to obtaining the prior consent the CC&Rs command.  First, Branches turns to section 4065, which states:  *"If a provision of this act*

10

requires that an action be approved by a majority of all members, the action shall be approved or ratified by an affirmative vote of a majority of the votes entitled to be cast." (Italics added.) The Law Revision Commission Comments on section 4065,[5] however, state: "Section 4065 is new. It is added for drafting convenience. This section only governs an election conducted pursuant to a provision of this act (i.e., the Davis-Stirling Common Interest Development Act). An election that is not required by this act would be governed by the association's governing documents."[6]

Branches similarly relies on section 4070, which states: "*If a provision of this act* requires that an action be approved by a majority of a quorum of the members, the action shall be approved or ratified by an affirmative vote of a majority of the votes represented and voting in a duly held election in which a quorum is represented, which affirmative votes also constitute a majority of the required quorum." (Italics added.) Section 4070 includes a Law Revision Commission Comment identical to the substance of the one quoted above with regard to section 4065.

Next, Branches cites section 6150, which requires an association to hold a meeting "[n]ot later than 30 days prior to the filing of any civil action by the association against the declarant or other developer of a common interest development for alleged damage to the common areas, alleged damage to the separate interests that the association is obligated to maintain or repair, or alleged damage to the separate interests that arises out of, or is integrally related to, damage to the common areas or separate interests that

---

[5] The official comments of the California Law Revision Commission "are declarative of the intent not only of the draftsman of the code but also of the legislators who subsequently enacted it." (*People v. Williams* (1976) 16 Cal.3d 663, 667-668.) The comments are persuasive, albeit not conclusive, evidence of that intent. *(Conservatorship of Wendland* (2001) 26 Cal.4th 519, 542.) Branches, however, offers no contrary evidence of legislative intent, and when taken together with the plain language of the statute, we find the comment accurately expresses the intent of the statute.

[6] An association's "'[g]overning documents'" include its CC&Rs. (§ 4150.)

11

the association is obligated to maintain or repair . . . ." The notice has several requirements, but states nothing about a vote of the members.

Branches argues that CC&R section 12.4.2 "incorporates the requirements of Civil Code section 6150. It is, consequently, a requirement of the Act itself." It argues the arbitrator misconstrued the trial court to limit the word "election" to "a vote for the purpose of appointing someone to a position," rather than "anything requiring owner approval,"[7] and therefore, a vote on whether to proceed with a claim against the developer was within "a provision of" the Act. But the cases Branches cites do not stand for this proposition. None of them address sections 4065, 4070, or 6150 at all, and certainly none of them state that an election required by the association's documents, but not by a statute, falls within those provisions.

Indeed, Branches next points out that some provisions of the Act *do* require votes of the membership: "The Davis-Stirling Act, for example, explicitly requires section 4065 elections to extend the term of the declaration (Civ. Code, § 4265, subd. (a)), to amend the declaration (Civ. Code, § 4270, subd. (b)), and to make the association responsible for repairing damage to units from wood-destroying pests or organisms (Civ. Code, § 4780, subd. (b))." The fact that certain provisions explicitly require such votes does not help Branches; it only supports the contention that absent a specific requirement in the Act to hold an election, the association's governing documents control. (§§ 4065, 4070.) Branches points to no provision of the Act requiring a vote before filing a claim against a developer; accordingly, neither sections 4065 or 4070 are an "unwaivable statutory right" in this context.

Branches contends, for the first time on appeal, that section 6150, which requires notice and a meeting before filing a claim against a developer, is "triply germane here." First, it asserts it is the "same requirement imposed by CC&R section 12.4.2."

---

[7] The arbitrator made no such finding.

This is incorrect on its face. Section 12.4.2 of the CC&R does not require a meeting, it requires a vote. Branches next claims that section 6150's "prior to" language mirrors the CC&R language. While this is indisputably true, it is of little import here. The statute and the CC&R section have different requirements.

Most importantly, Branches claims, section 6150 permits an association to file its claim before giving notice of the required meeting if it "has reason to believe that the applicable statute of limitations will expire before the association files the civil action, the association may give the notice, as described above, within 30 days after the filing of the action." (§ 6150, subd. (b).) Branches claims this to be the situation here, because Standard had previously filed and served a dispositive motion based on the statute of limitations (which, in fact, the arbitrator denied).

This does not help Branches in any event. Section 6150, subdivision (b), does not provide for "ratification," as Branches claims. Section 6150 does not require membership approval, merely notice and a meeting; there is nothing to "ratify." After complying with the section, the board can proceed to do anything it wishes with respect to filing a claim. Allowing notice after filing the claim if the statute of limitations is a concern merely creates a limited exception to the notice requirement. Section 6150 simply does not apply here.

Further, as Standard points out, even if the section did apply, Branches failed to comply with it. It filed its arbitration claim in January 2016 and did not obtain a vote of the membership until October 2016. It points to nothing in the statute that permits "ratification" outside the 30-day notice period.

Branches also contends that Corporations Code section 5034 confers an unwaivable right on an association's members to ratify any action taken. Branches is incorrect. That section states that the phrase "'Approval by (or approval of) the members' means approved or ratified by the affirmative vote of a majority of the votes . . . ." (Corp. Code, § 5034.) Branches argues, in effect, that the plain language of

13

the CC&Rs must be ignored. It cites cases that do not interpret this language in the context of a homeowners association, and which do not stand for this proposition. It does not cite any case (or statute) stating that CC&Rs requiring membership approval before the board takes a certain action are unenforceable. Accordingly, we reject this contention. "Prior to" means "prior to." It does not mean "after," unless there is specific statutory authority permitting later ratification.

Branches next turns to section 5000, which states association meetings "shall be conducted in accordance with a recognized system of parliamentary procedure . . . ." Branches contends that because *Robert's New Rules of Order* (4th ed. 2013) art. VI, section 39, states that approval of an action *may* occur by ratification, ratification is required as a method of approval in all circumstances. No authority on point supports this argument. *Robert's New Rules of Order*, *supra*, art. VI, section 39, itself states that ratification is only available when ratifying an action would not "violate . . . [an organization's] own constitution or by-laws." Here, the association's "constitution" – its CC&Rs – state that prior assent is required.

Branches' next argument (offered for the first time on appeal) is that "[a]s a practical matter" the association "acts as the owner's agent." Branches cites no California authority for this proposition, but asserts that because section 2307 provides that an agent's authority to act for its principal "may be" ratified after the fact, this creates a legal requirement that ratification "be available" as an alternate method of approval. We fundamentally disagree with Branches' "agency" theory, given that the Act sets forth extensive legal principles governing the management of associations. (§ 4000, et seq.; see *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81.) At no point in the Act is the association declared the "agent" of the owners; surely, had the Legislature intended to create an agency relationship, it would have done so. Moreover, even if we were to accept this theory, the fact that section 2307 states that

14

actions "may be" ratified after the fact does not create a statutory right requiring that ratification be available in all circumstances.

Branches' attempts to bring the relatively few cases that found an arbitrator violated an unwaivable statutory right within the facts here are unavailing. Those cases involve specific statutory directives or address the conduct of the arbitration itself, as Branches admits. (See, e.g., *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269; *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431; *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327.) Branches insists "the Act mandates ratification," however, which, as discussed above, we find to be untrue. Therefore, these cases are unhelpful. In sum, we conclude Branches has not identified an unwaivable statutory right preventing an association's CC&Rs from requiring approval prior to the board instituting a legal claim against a developer.[8]

*Public Policy*

Branches alludes to public policy at several points, claiming, for example, that the Legislature has made a "clear pronouncement of public policy favoring ratification." We disagree that public policy works in its favor here.

The Act, as we have mentioned, provides a comprehensive framework for the governance of homeowners associations. The Act provides for numerous limits on the power of the board, and a system of checks on the board's power. Associations are required to publish certain information to the membership to keep them informed. (§§ 5300, 5305, 5310.) Associations are required to act by a majority vote or a majority

---

[8] Branches next looks to maxims of interpretation to support its argument that "prior" does not really mean what it says it means. But because it does not identify a statute including an "unwaivable statutory right," we need not consider the arbitrator's interpretation of the contract.

15

of a quorum if a vote is required. (§§ 4065, 4070.) Even amendments to the governing documents to delete construction or marketing provisions after an association is built must be approved by the membership. (§ 4230.) Rules adopted by the board must be in writing, within the authority of the board as conferred by the governing documents, and reasonable. (§ 4350.) On certain subjects, the board cannot act by fiat and must provide notice to members of potential changes in the association's rules (§ 4360), and a sufficient number of members can call a special meeting to attempt to reverse those changes (§ 4365).

Section 6150 is a part of those checks. As we discussed above, it requires notice to the membership and a meeting before legal action may be instituted against a developer. The reason for this is sound: to ensure that a board, dealing with a difficult issue like construction defects, has not lost the forest for the trees and decided to institute legal action without notifying the members. This is completely consistent with the many other homeowner rights that are set forth in the Act.

The CC&R provision here goes a step further, requiring affirmative consent of a quorum of the members "prior to" instituting such action. This, too, is consistent with the aims of the Act – to balance the association's need to operate efficiently with the rights of its members to be informed and participate in decisions that could impact the association for years, if not decades, to come. Branches would have us believe that there is a "right to ratify" after the fact, as if that confers some benefit on the owners. It does not; it ignores their explicit right to consent beforehand, before a road has been taken that will be difficult, expensive, and time consuming. We cannot ignore such a provision because it is inconvenient for the association in this particular case; the association had the CC&Rs and was on notice of their contents. Public policy requires us to follow their plain language.

16

Accordingly, we find no violation of public policy in the arbitrator's decision, and conclude that judicial review of the arbitration award was not merited in this instance.

## III

### DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRANCHES NEIGHBORHOOD CORPORATION, | G055201 |
| Plaintiff and Appellant, | (Super. Ct. No. 30-2017-00913469) |
| v. | ORDER GRANTING REQUEST FOR PUBLICATION |
| CALATLANTIC GROUP, INC., | |
| Defendant and Respondent. | |

Counsel for Respondent has requested that our opinion, filed on August 10, 2018, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

18