Filed 2/6/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ALDEA DOS VIENTOS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALATLANTIC GROUP, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B291731<br>(Super. Ct. No. 56-2013-<br>00445377-CU-OR-VTA)<br>(Ventura County) |

It is reputed that condominium projects have three phases—planning, building, and the lawsuit. Obviously, this case is an example of the third phase. We are optimistic there are numerous condominium projects that experience only the first two phases.

A condominium association sued the developer alleging construction defects. The association's governing documents require arbitration of such disputes and a vote of at least 51 percent of the association's membership prior to beginning arbitration. The association began arbitration without obtaining a vote of its members. Later, the members overwhelmingly voted to pursue the arbitration. The arbitrator dismissed the arbitration for lack of a membership vote prior to its

commencement.  The trial court confirmed the award and entered judgment for the developer.  We reverse.  We disagree with *Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743 which holds otherwise.

FACTS

Aldea Dos Vientos is a condominium project in Thousand Oaks.  The project is a common interest development subject to the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000, et seq., hereafter Davis-Stirling Act).

The project is governed by the Aldea Dos Vientos homeowners association (Association) and recorded covenants, conditions, and restrictions (CC&R's).  CalAtlantic Group, Inc. is the successor to the developer of the project (Developer).

The Association claims it discovered $5.6 million in construction defects in the common areas and individual units.  Beginning in November 2012, the Association engaged in discussions with the Developer about the defects.  In November 2013, when the discussions were unproductive, the Association brought suit against the Developer.  The trial court stayed the litigation on the parties' stipulation to enter into mediation, and if that failed, arbitration administered by JAMS.

Mediation failed to produce a settlement.  Section 7.01A of the CC&R's requires that all disputes between the Developer and the Association or its members, including construction defect claims, be resolved by arbitration.  On June 24, 2016, the Association filed a demand for arbitration.  The Developer filed an answer in arbitration for the first time raising section 7.01B of the CC&R's (hereafter section 7.01B) as a defense.  Section 7.01B provides: "Required Vote to Make Claim.  Prior to filing a claim pursuant to the ADR Provisions, the Association must obtain the

vote or written consent of Owners other than Declarant who represent not less than fifty-one percent (51%) of the Association's voting power (excluding the voting power of Declarant)."

The Association admitted that it had not obtained a vote from its members prior to beginning arbitration. The arbitrator stayed the arbitration to allow the Association to petition the trial court to resolve the issue of arbitrability.

In the meantime, the Association obtained the approval of over 99 percent of its members to continue the arbitration, with only one member voting against continuing out of 116 votes.

The Association moved the trial court to rule that the retroactive vote allowed arbitration to proceed. The court denied the motion on the ground that arbitrability was a matter for the arbitrator to decide.

The matter returned to the arbitrator. The arbitrator heard oral argument on motions for summary judgment by the Association and the Developer concerning interpretation of section 7.01B. The Developer filed a motion to dismiss based on the Association's failure to comply with section 7.01B prior to beginning arbitration. The Association filed a cross-motion on the ground that the ratifying vote of the Association members satisfied section 7.01B. The Association also filed a second demand for arbitration. The arbitrator summarily dismissed the original demand for arbitration.

The Developer moved the trial court to confirm the arbitrator's award. The court concluded that the dismissal of the arbitration constituted a final determination of the rights of the parties notwithstanding the second demand for arbitration. The

court entered judgment in favor of the Developer and against the Association.

## DISCUSSION

## I.

*Arbitrator Exceeded His Power*

The trial court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).) Arbitrators exceed their power by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) That is particularly true of the rights and policies governing the conduct of the arbitration itself. (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 765.)

Section 7.01B contravenes explicit legislative expressions of public policy.

*(a) Housing Policy*

The Legislature stated that "housing is of vital statewide importance to the health, safety, and welfare of the residents of this state . . . ." (Health & Saf. Code, § 50001.) The Legislature intended housing to be free of substantial construction defects. (See Civ. Code, §§ 896 [listing construction defects for which the developer is liable]; 897 [developer liable for defects not expressly listed]; 941, subd (a) [10-year statute of limitations on actions for construction defects].) Provisions such as section 7.01B contravene statutory policy by giving the Developer the unilateral power to bar actions for construction defects.

4

*(b) Policy Against Unreasonable Servitudes*

The Davis-Stirling Act prohibits the enforcement of unreasonable provisions in the CC&R's. (Civ. Code, § 5975, subd. (a) ["The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable"].) Here, section 7.01B as interpreted by the arbitrator is not just unreasonable, it is unconscionable. It gives the Developer veto power over the Association's claims in spite of the members' vote to proceed with the arbitration.

The Developer relies on *Branches Neighborhood Corp. v. CalAtlantic Group, Inc.*, *supra*, 26 Cal.App.5th 743 (*Branches*). After the trial court affirmed the arbitrator's award, the Fourth District of the Court of Appeal, Division Three decided *Branches*. The facts in *Branches* are similar to the facts here and involved the same developer and arbitrator.

In *Branches*, a condominium development's CC&R's contained a provision similar to section 7.01B, requiring the condominium association to obtain a vote of at least 51 percent of its members before beginning arbitration against the project's developer. The association began arbitration without seeking a vote. When the developer sought to dismiss the arbitration, the association obtained a ratifying vote from over 51 percent of its members. Nevertheless, the arbitrator dismissed the arbitration and the trial court entered judgment against the association. The Court of Appeal affirmed. The court rejected the association's argument that the ratification vote was sufficient, pointing out that the CC&R's require the vote before arbitration. (*Branches*, *supra*, 26 Cal.App.5th at p. 758.) The court also rejected the association's argument that the arbitrator exceeded his powers by issuing an award that violates a party's unwaivable statutory

5

rights or that contravenes an explicit legislative expression of public policy.

According to the interpretation of section 7.01B confirmed by *Branches*, unless the Association has obtained approval by a vote of at least 51 percent of its members prior to beginning arbitration, it has forever forfeited its right to pursue its claims in any forum in spite of an overwhelming ratifying vote. This interpretation directly violates the public policy expressed in Code of Civil Procedure section 1286.2, subdivision (a)(4). It amounts to a trap for the unwary set by the Developer to bar claims against it. The Developer is burdened with no similar hurdle prior to seeking a determination of its rights.

*Branches* suggests provisions such as section 7.01B are for the benefit of the association's members. *Branches* states the membership vote requirement "balance[s] the association's need to operate efficiently with the rights of its members to be informed and participate in decisions that could impact the association for years, if not decades, to come." (*Branches*, *supra*, 26 Cal.App.5th at p. 758.) But the members voted to ratify the Association's decision to arbitrate. It is an odd benefit that deprives the members of the right to proceed with an arbitration they voted to undertake. The benefit suggested by *Branches* is better realized by treating covenants such as section 7.01B as between the association and its members only, and not a covenant giving the developer standing to assert the clause as a bar to the rights of the association.

The language of section 7.01B does not give the Developer veto power over claims against it. Nor does section 7.01B inform the Association or its members of the devastating effect the failure to comply will have on its rights, or that the initial failure

6

to comply, no matter how inadvertent, will be irremediable. We decline to follow *Branches*.

As interpreted by *Branches*, section 7.01B violates explicit legislative expressions of public policy.

## II.

### *Senate Bill No. 326*

The Legislature has also determined that provisions such as section 7.01B are unconscionable. Senate Bill No. 326 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 207, § 2) was enacted and signed by the Governor on August 30, 2019 and took effect on January 1, 2020. (Cal. Const., art. IV, § 8, subd. (c)(1); Gov. Code, § 9600, subd. (a).) The bill adds Civil Code section 5986, subdivision (b) as part of the Davis-Stirling Act.

Senate Bill No. 326 bars the use of provisions such as section 7.01B as a defense for developers against claims of condominium associations.[1]

---

[1] Senate Bill No. 326 adds Civil Code section 5986, subdivision (b) as follows: "The governing documents shall not impose any preconditions or limitations on the board's authority to commence and pursue any claim, civil action, arbitration, prelitigation process . . . or other legal proceeding against a declarant, developer, or builder of a common interest development. Any limitation or precondition, including, but not limited to, requiring a membership vote as a prerequisite to, or otherwise providing the declarant, developer, or builder with veto authority over, the board's commencement and pursuit of a claim, civil action, arbitration, prelitigation process, or legal proceeding against the declarant, developer, or builder, or any incidental decision of the board, including, but not limited to, retaining legal counsel or incurring costs or expenses, is unenforceable, null, and void. The failure to comply with those limitations or

The Developer, however, relies on Civil Code section 5986, subdivision (d), also added by Senate Bill No. 326. That subdivision provides: "This section applies to all governing documents, whether recorded before or after the effective date of this section, and applies retroactively to claims initiated before the effective date of this section, except if those claims have been resolved through an executed settlement, a final arbitration decision, or a final judicial decision on the merits." The Developer argues the section is not retroactive because there has been a "final arbitration decision."

But the most reasonable construction of Civil Code section 5986, subdivision (d) is that the phrase "on the merits" following "final judicial decision" also applies to "final arbitration decision." There is no reason why the Legislature would intend to require a final judicial decision to be on the merits but not a final arbitration decision to be on the merits. Here the arbitrator's decision was not on the merits and the judicial decision was not final.

Also here, the arbitrator's decision was not final. The Association filed two demands for arbitration, one filed on June 24, 2016, before the membership vote, and the other filed on October 31, 2017, after the membership vote. The arbitrator found the first demand for arbitration void because it was made prior to the vote required by section 7.01B. The arbitrator's order expressly states, "This finding does not directly impact the viability of the Demand in Arbitration filed October 31, 2017." The arbitrator ordered that: "The Demand (Claim) in Arbitration filed June 24, 2016 . . . is dismissed." The arbitrator never ruled

_____

preconditions, if only, shall not be asserted as a defense to any claim or action described in this section."

on the October 31, 2017 demand.  His decision did not end arbitration.

In any event, Senate Bill No. 326 aside, the arbitrator's award violates other explicit legislative expressions of public policy.

## DISPOSITION

The judgment is reversed.  Costs on appeal are awarded to appellant.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

9

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Strom & Associates, Robb M. Strom; Benedon & Serlin, Gerald M. Serlin and Judith E. Posner for Plaintiff and Appellant.

Plante Lebovic, Brian C. Plante, Gregory M. Golino and Nicole E. Bartz for Defendant and Respondent.