Filed 7/29/15; directed to be published by order of Supreme Court (S229081)  (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SINGERLEWAK LLP, | B259722 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS145595) |
| v. | |
| ANDREW GANTMAN, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Barbara M. Scheper, Judge.  Reversed and remanded with directions.

AlvaradoSmith, Theodore E. Bacon, William M. Hensley, and Timothy Matthew Hansen, for Plaintiff and Appellant SingerLewak.

Wheeler & Associates and David C. Wheeler, for Defendant and Respondent.

_____

SingerLewak LLP appeals from a trial court order denying its petition to confirm an arbitration award. The arbitrator determined a non-compete agreement Andrew Gantman signed as a partner in SingerLewak was enforceable. The trial court concluded judicial review of the arbitration award was required and vacated the award. After a de novo review, the trial court found the non-compete agreement was unenforceable under California law. We conclude the general rule prohibiting review of an arbitration award applied in this case. We therefore reverse the trial court order.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant underlying facts are largely undisputed. SingerLewak is an accounting firm. In 2007, Gantman became a partner in the firm; he had previously worked for the firm as an employee. In 2011, Gantman withdrew or was terminated from the partnership. Upon admission to the partnership, Gantman had agreed to be bound by the partnership agreement which contained the following provision (Paragraph 21A):

"In the event that a Withdrawing, Retired, Terminated, or Removed Partner breaches any of the covenants contained herein or is terminated by reason of default . . . or provides services at any time during a period of four (4) years from withdrawal as an individual or as an employee, agent, consultant, officer, director, member or shareholder of any entity and provides the same or similar type as that of the partnership to any then current clients of the partnership, then in addition to any other remedies the Partnership may have at law or in equity, the Partnership may, at its option, reduce the liquidation payments payable to said . . . Partner pursuant to Paragraph 14, above, by an amount equal to one hundred fifty percent (150%) of the greater of the gross fees billed in the twelve (12) months preceding the Termination Date to any client of the Partnership that the . . . Partner services within four (4) years after the Termination Date, or the gross fees billed to any such client in that client's last twelve months as a client of the Partnership. In the case of any client who was a client of the Partnership for less than a twelve month period, the gross fees billed to that client shall be annualized at the same rate in order to estimate the amount of fees which the Partnership might have received for a full twelve month period. . . . . [¶] Should the reduction in the liquidation payment,

2

pursuant to the above, exceed the amount paid to the Withdrawing, Retired, Terminated or Removed Partner, said Partner shall pay the excess to the Partnership within sixty (60) days after the amount of excess has been determined."

After his departure from the firm, Gantman provided services to several SingerLewak clients. SingerLewak demanded that Gantman pay the firm over $260,000, pursuant to Paragraph 21A. Gantman did not make the payment.

The parties submitted the dispute to arbitration, as required under the partnership agreement. Gantman argued Paragraph 21A was not enforceable under California law. He asserted Business and Professions Code section 16602—providing an exception to the general prohibition against restraints on competition for certain agreements made by partners—did not apply because he was not a partner within the meaning of the provision.[1] He further argued Paragraph 21A was invalid under section 16602 because it contained no geographic limitation.

The arbitrator concluded Gantman was a partner within the meaning of section 16602. The arbitrator also determined Paragraph 21A was enforceable. He agreed with SingerLewak's argument that the provision was not a covenant not to compete, but was instead "a provision allowing competition but imposing a cost on departing partners who service clients of the firm." The arbitrator reasoned section 16602 was not directed at such provisions. The arbitrator further found Paragraph 21A was not void for lack of an "express geographical limitation" because it contained an "implicit geographical limitation." The decision noted the termination fee was imposed only when a departing partner serviced clients of the firm. The arbitrator then reasoned: "Those clients do business only in certain areas, and the firm and its former partners would necessarily service their clients from locations accessible to the clients' locations. A departing SingerLewak partner who services clients of the firm is necessarily constrained to a

---

[1] All further statutory references are to the Business and Professions Code unless otherwise noted.

3

geographical area in which the clients operate and in which the firm has goodwill. Thus, the provision does not conflict with the policies underlying section 16602."

SingerLewak filed a petition to confirm the arbitration award in the superior court. Gantman opposed the petition and filed a competing petition to vacate the award. Gantman argued the arbitration award was illegal and violated public policy because it enforced an illegal restraint on competition. Gantman asserted Paragraph 21A was void because it lacked any geographical limitation. The trial court concluded de novo review of the evidence was required; after review, the court determined Paragraph 21A was invalid and unenforceable because it did not contain any geographic restrictions as required by section 16602. The court further concluded reformation of the agreement was not proper. The court therefore vacated the arbitration award. SingerLewak timely appealed.

## DISCUSSION

### I.     Judicial Review of the Arbitration Award was Not Appropriate

*A. Judicial review and the statutory right/public policy exception to the general rule*

In general, judicial review of an arbitration award is extremely limited. As the California Supreme Court explained in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 (*Moncharsh*), "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." This is because parties who enter into arbitration agreements are presumed to know the arbitrator's decision will be final and binding; "arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Id.* at p. 10.) Courts do not review the validity of an arbitrator's reasoning, and, while Code of Civil Procedure sections 1286.2 and 1286.6 set forth grounds for vacating or correcting an arbitration award, " '[a]n error of law is not one of those grounds.' [Citation.]" (*Moncharsh,* at pp. 11, 14.) Code of Civil Procedure section 1286.2, subdivision (d) allows a court to vacate an arbitration award when the arbitrator has exceeded his or her powers "and the award cannot be corrected without affecting the merits of the decision

4

upon the controversy submitted." But, "[i]t is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citation.]" (*Moncharsh*, at p. 28; *Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 301-302 [alleged improper application of California law not a basis for judicial review]; *Marsch v. Williams* (1994) 23 Cal.App.4th 238, 245 [arbitrators did not exceed their powers in failing to apply Corporations Code provision, even if it was error].) The *Moncharsh* court further explained the contention that the parties' contract or transaction was illegal provides a ground for judicial review of the arbitration award only where the party claims the *entire* contract or transaction is illegal, not just one provision of the contract. (*Moncharsh,* at p. 32.)

Yet, the *Moncharsh* court noted "there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights. . . . [¶] Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground. The reason is clear: the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure. (§ 1280 et seq.) Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Moncharsh,* at p. 32.) The court summarized its conclusion: "[T]he normal rule of limited judicial review may not be avoided by a claim that a provision of the contract, construed or applied by the arbitrator, is 'illegal,' except in rare cases when according finality to the arbitrator's decision would be incompatible with the protection of a statutory right." (*Id.* at p. 33.)

Our high court has subsequently applied this exception to review challenged arbitration awards. In *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269 (*Round Valley*), the underlying dispute concerned whether a school board could agree through collective bargaining to give probationary employees greater

5

procedural protections than those set forth in the Education Code. (*Id.* at p. 272.) When a probationary teacher challenged his notice of non-renewal, arguing it did not comply with provisions in the collective bargaining agreement between the teachers association and the school district, the school district asserted the grievance was not arbitrable. The superior court, however, granted a motion to compel arbitration. The arbitrator found the school district had violated the collective bargaining agreement and ordered it to comply with the agreement's provisions. The school district challenged the validity of the relevant collective bargaining agreement provisions, but the arbitrator "left that issue to judicial determination." (*Id.* at p. 273.) The district then filed a petition to vacate the arbitration award. It argued the arbitrator exceeded his powers because provisions of the Education Code preempted any contradictory provisions in the collective bargaining agreement regarding procedures for reelection of probationary teachers. (*Ibid.*) Further, according to the district, pursuant to provisions of the Government Code, the reelection issue could not be the subject of collective bargaining. The district thus asserted the entire subject of reelection of probationary teachers was never properly subject to the arbitration provisions of the collective bargaining agreement. (*Id.* at p. 276.)

In its review, the court explained the threshold issue was whether it had authority to review the arbitrator's award, and this question was independent of the issue of whether the award should be upheld. (*Round Valley,* at p. 276.) Judicial review was justified because if the school district was correct concerning the scope of its statutory rights under the Education and Government Codes, the case presented the "exceptional circumstance" allowing for judicial review of the arbitrator's decision. The court reasoned: "Should District's interpretation of the law prevail, we would be faced with an 'explicit legislative expression of public policy' that issues involving the reelection of probationary teachers not be subject to arbitration. [Citation.] This expression of public policy would thus conflict with the expressed legislative intent to limit private arbitration awards to statutory grounds for judicial review. Thus, rigidly insisting on arbitral finality here would be 'inconsistent with the protection of a party's [i.e., District's] statutory rights.' [Citations.]" (*Id.* at p. 277.)

6

Our high court applied the exception again in *Aguilar v. Lerner* (2004) 32 Cal.4th 974 (*Aguilar*), to review an arbitration award in an attorney fee dispute. After losing in arbitration, the plaintiff (client) moved to vacate the arbitration award, contending the parties' arbitration agreement was unenforceable because it was contrary to the mandatory fee arbitration act, set forth in section 6200, et seq. The plaintiff contended the arbitrator exceeded his powers in resolving the parties' dispute because the agreement to arbitrate "contravened both plaintiff's statutory rights as set forth in the [mandatory fee arbitration act] and the public policy underlying the statute." (*Aguilar,* at pp. 982-983.) The court agreed judicial review was appropriate because "enforcement of an arbitration agreement that violates a plaintiff's rights under the [mandatory fee arbitration act] would exceed the arbitrator's powers." (*Id.* at p. 983.)

*Round Valley* and *Aguilar* both involved a party's statutory rights that directly affected the propriety of the arbitration itself. Recent California Supreme Court cases have approached judicial review of an arbitration award in the context of mandatory arbitration of statutory employment claims. For example, in *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 (*Pearson*), our high court vacated an arbitration award based on a legal error, explaining: "[C]onstruing the [California Arbitration Act] in light of the Legislature's intent that employees be able to enforce their right to be free of unlawful discrimination under FEHA, an arbitrator whose legal error has barred an employee subject to a mandatory arbitration agreement from obtaining a hearing on the merits of a claim based on such right has exceeded his or her powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4), and the arbitrator's award may properly be vacated." (*Id.* at p. 680.) Yet, in *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909 (*Richey*), the court characterized the *Pearson* decision as creating only a "narrow rule," and the case "emphasized that its legal error standard did not mean that all legal errors are reviewable."[2] (*Richey*, at p. 918.)

---

[2] In *Richey*, the trial court had reviewed and vacated an arbitration award in a Family Medical Leave Act/California Family Rights Act matter. Although the trial court

7

Several courts of appeal have applied the statutory rights or public policy exception to review an arbitration award, even when the statutory right or public policy at issue was unrelated to the legitimacy of the arbitration itself. In *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327, 339-340 (*City of Palo Alto*), the court reviewed and vacated an arbitration award that ordered the reinstatement of an employee who was terminated after he made threats of violence against another employee. The employer, the city of Palo Alto, had also secured an injunction prohibiting the terminated employee from being near city work sites. The employee challenged his termination in arbitration. The arbitrator concluded the termination violated the employee's procedural rights and was unsupportable on the merits. He ordered the employee reinstated. (*Id.* at pp. 332-333.)

The city challenged the arbitration award, arguing in part the award violated the public policy requiring employers to provide a safe workplace. (*City of Palo Alto,* at p. 334.) Although the court agreed there was such an express public policy, it found the arbitration award requiring reinstatement of an employee who had made violent threats did not necessarily violate that policy. The court reasoned the city had not established the public policy obligated the city to automatically fire any employee who makes a threat of violence, regardless of the circumstances. Further, the arbitrator had implicitly concluded the employee did not intend to carry out his threat. The court concluded reinstatement of an employee who had no intention of carrying out his or her threat of violence was "not necessarily precluded because there is no absolute public policy against employment of persons who make threats of violence, which operates regardless whether there is an

<hr />

confirmed the award, the court of appeal concluded the arbitrator erred in deciding the case based on the federal "honest belief" defense, which was untested in California courts, and the error was a basis to vacate the award. (*Richey,* at pp. 912-913.) Our high court did not decide whether any error that occurred deprived the employee of an unwaivable statutory right, justifying judicial review and vacation of the award. Instead, the court concluded any error was not prejudicial because the arbitrator found the employee was dismissed for another reason. The arbitrator "made no legal error that deprived plaintiff of an unwaivable statutory right when it relied upon the substantial evidence that plaintiff violated company policy." (*Id.* at pp. 920-921.)

8

actual risk of violence." (*Id.* at p. 337.) However, the court vacated the arbitration award because it was irreconcilable with the public policy requiring obedience to court orders; the employee could not return to work without violating the injunction. (*Id.* at pp. 339-340.)

In *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431 (*Jordan*), the court reviewed and vacated an arbitration award the court determined was an unconstitutional gift of public funds. In that case, the Legislature had, by legislative enactment, authorized a certain maximum amount of attorney fees for a separate litigation. The arbitrator's award exceeded the amount authorized by the Legislature. Likewise, in *Department of Personnel Administration v. California Correctional Peace Officers Assn.* (2007) 152 Cal.App.4th 1193, the court reviewed and vacated an arbitration award reforming a memorandum of understanding between a state agency and public employee union. The Legislature had already approved the terms of the memorandum prior to the arbitration. The arbitrator's award changing those terms violated the public policy of legislative oversight of state employee contracts. (*Id.* at pp. 1195, 1203.)

More recently, in *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21 (*Ahdout*), the court concluded judicial review of an arbitration award was required because, if the losing party was correct, the award would contravene the explicit legislative expression of public policy embodied in section 7031 regarding unlicensed contractors. In the underlying arbitration, the appellant sought, among other things, disgorgement of construction costs, pursuant to section 7031, which mandates disgorgement of compensation received by an unlicensed contractor. The arbitrators rejected the claim, concluding the respondents were not required to disgorge the construction costs and, essentially, that section 7031 did not apply. (*Id.* at p. 28.) The trial court rejected the losing party's petition to vacate the award, reasoning it did not have the power to review the arbitrators' decision for errors of fact or law. (*Id.* at p. 29.)

9

The court of appeal disagreed, reasoning that because "section 7031 constitutes an explicit legislative expression of public policy regarding unlicensed contractors, the general prohibition of judicial review of arbitration awards does not apply. . . . [W]here a public policy is articulated explicitly by the Legislature, as with section 7031, courts are vested with the final word on whether the provision applies." (*Ahdout,* at pp. 38, 39.) While in *Moncharsh*, the court concluded nothing in the Rules of Professional Conduct suggested resolution by an arbitrator of what was "essentially an ordinary fee dispute would be inappropriate or would improperly protect the public interest," the *Ahdout* court indicated the contractor licensing laws are intended to protect the general public from shoddy construction work, "and thus judicial review of arbitration awards that allegedly fail to enforce [the law] is appropriate." (*Ahdout*, at p. 39; *Moncharsh,* at p. 33.) The court reversed the judgment and remanded to the trial court with directions to conduct a de novo review of the evidence to determine whether section 7031 was applicable. (*Id.* at p. 40.)

However, courts have refused to apply the exception when no explicit legislative expression of public policy is involved, or where the sole issue is merely an alleged error in the interpretation or application of the law governing the claim properly subject to arbitration. Thus, in *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401 (*Jones*), the plaintiff's employment agreement with the defendant contained noncompetition and arbitration clauses. The agreement expressly declared that its provisions were to be construed in accordance with New Jersey law. (*Id.* at pp. 405-406.) The arbitrator rejected the plaintiff's argument that under New Jersey choice of law analysis, the noncompetition agreement should be interpreted under California law. (*Id.* at p. 406.) The arbitrator concluded the noncompetition agreement could be enforced against the plaintiff, and awarded the defendant damages for the plaintiff's previous violation of the agreement. (*Id.* at p. 407.) The plaintiff opposed the defendant's petition to confirm the award. He contended the award was based on an illegal contract that violated California's policy against covenants not to compete. (*Ibid.*)

10

The trial court reviewed and vacated the arbitration award. It concluded the arbitrator erred in failing to apply California law and the covenant not to compete was illegal on its face under section 16600. (*Jones,* at p. 407.) The Court of Appeal disagreed. The court acknowledged *Moncharsh* allows for judicial review of an arbitration award when granting finality to the arbitrator's decision would be inconsistent with the protection of a party's statutory right. But the *Jones* court concluded the issue before it was different because the parties' agreement authorized the arbitrator to determine the applicable law and the enforceability of the covenant not to compete. (*Jones,* at p. 410.) The court further concluded the arbitrator's findings were "not palpably erroneous" because some limits on a former employee's right to pursue his or her occupation are permissible under California law. (*Id.* at p. 411.) Moreover, the alleged illegality of the covenant not to compete did not render the dispute non-arbitrable. Since the alleged illegality affected only a portion of the contract that did not include the arbitration agreement, the arbitrator had the authority to determine whether the covenant not to compete was enforceable. (*Id.* at p. 413.)

Likewise, in *City of Richmond v. Service Employees Internat. Union Local 1021* (2010) 189 Cal.App.4th 663, the court rejected the public policy exception as a basis to review an arbitration award. The underlying case involved an employee who was terminated after being accused of sexual harassment and dishonesty. The employee challenged the termination in arbitration. The arbitrator concluded the sexual harassment claims were time-barred and the evidence did not support the dishonesty charges. The arbitrator accordingly found no cause for termination and ordered the employee reinstated. (*Id.* at pp. 667-668.) On appeal, the court concluded the arbitration award did not violate public policy. Although there is a strong public policy against sexual harassment in the workplace, the court concluded that policy did not preclude an arbitrator from ordering an accused harasser reinstated where the accusations were time-barred. (*Id.* at pp. 671-672.)

11

### B. Judicial Review is Not Appropriate in this Case

As the California Supreme Court summarized in *Richey*: "Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy."[3] (*Richey,* at p. 916.) *Round Valley* and *Aguilar* indicate that evaluating a challenge to an arbitration award is a two-step process—first the court must determine whether the award is reviewable, and only if review is appropriate does the court consider whether the award should be upheld. (*Round Valley*, at p. 276; *Aguilar*, at p. 981.) The threshold question here, then, is whether according the arbitration award finality would be inconsistent with protecting Gantman's statutory rights. We must consider whether, if Gantman is correct concerning his rights under section 16600 and 16602, the award would contravene an explicit legislative expression of public policy that undermines the strong presumption in favor of private arbitration. We conclude it would not, and judicial review is therefore not appropriate.

"Section 16600 states: 'Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.' . . . [It is well established that] section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. [Citation.] The law protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.' [Citation.] It protects 'the important legal right of persons to engage in businesses and occupations of their choosing.' [Citation.]" (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 945-946 (*Edwards*).) At least one court has indicated this is an unwaivable right. (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 659-660.)

---

[3] Further, whether the arbitrator exceeded his or her powers is reviewed on appeal de novo. (*Richey*, at p. 918, fn. 1.)

Yet, the policy embodied in section 16600 has exceptions, and this case concerned one of those exceptions. Under section 16602, "Any partner may, upon or in anticipation of [a dissolution of the partnership or dissociation of the partner from the partnership], agree that he or she will not carry on a similar business within a specified geographic area where the partnership business has been transacted, so long as any other member of the partnership, or any person deriving title to the business or its goodwill from any such other member of the partnership, carries on a like business therein." (§ 16602, subds. (a) & (b).)

Thus, when it comes to partners and a partnership, the public policy in favor of open competition is not absolute. As the California Supreme Court explained in *Edwards*, " '[S]ection 16600 embodies the original, strict common law antipathy toward restraints of trade, while the section 16601 and 16602 exceptions incorporated the later common law "rule of reasonableness" in instances where those exceptions apply.' " (*Edwards*, at p. 948.) In *Howard v. Babcock* (1993) 6 Cal.4th 409, our high court explained: "Not every agreement between partners in restraint of competition is permitted. We have held that the common law 'rule of reason' should apply to evaluate the noncompetition agreement under Business and Professions Code section 16602." (*Id.* at p. 416.) Because section 16602 incorporates the common law "rule of reasonableness," courts have at times enforced partnership covenants not to compete *to the extent* that such agreements are lawful under section 16602, even if the agreements were facially invalid when taken as a whole. (*Swenson v. File* (1970) 3 Cal.3d 389, 395 (*Swenson*); *Roberts v. Pfefer* (1970) 13 Cal.App.3d 93, 98 [trial court directed to make findings as to the reasonableness of a covenant's restriction barring doctor from practicing within a portion of the county; statute at the time allowed restriction only as to city or town].)[4]

---

[4] We do not reach the question of whether, under the guise of the rule of reasonableness, a court or arbitrator may imply a geographic limitation in a partnership covenant not to compete when the parties did not include one. Our only conclusion is that in light of the lack of an absolute prohibition on restraints on competition for

13

In *Swenson*, for example, our high court explained the applicable version of section 16602 "substantially restrict[ed] the scope and effect" of the covenant not to compete at issue in the case. The covenant contained two provisions, a blanket prohibition on servicing the firm's current or former clients, and one restricting the departing partner from servicing clients within a 20-mile radius of the partnership offices. Neither provision appeared to fall within the section 16602 exception.[5] Yet, despite the infirmity of the provisions as written, section 16602 did not invalidate the covenant in its entirety, "for under section 16600 a contract in restraint of trade is only 'to that extent void.' Thus, the rule of severability may be invoked to uphold defendant's covenant to the extent that it falls within the limits permitted by section 16602." (*Swenson*, at p. 395.) The court noted the blanket prohibition on servicing the firm's clients was facially invalid due to the lack of any geographic restriction. Still, it reasoned both provisions could be upheld "to the extent that serving such clients would also constitute, under former section 16602, 'carrying on' an accounting business within the Cities of Pasadena or Azusa, where the partnership offices are located. But neither subsection may validly be construed as enjoining defendant from serving clients, regardless of the location of their offices, unless defendant 'carries on' business with those clients in Pasadena or Azusa." (*Ibid,* fn. omitted.) The analysis then turned to whether the departing partner had carried on business with clients in Pasadena and Azusa. The court invoked the common law concept of reasonableness to answer that question. (*Id.* at pp. 396-397.)

partners, and the latitude of courts to enforce agreements under section 16602 to the extent they are valid, the arbitrator's issuance of an award enforcing the partnership agreement's restraint on competition did not violate Gantman's unwaivable statutory rights or contravene an explicit legislative expression of public policy, as those terms have been interpreted and applied by the courts in this state.

[5]     At the time the partnership agreement was executed, section 16602 allowed partners to agree not to carry on a similar business "'within the same city or town or a specified part thereof, where the partnership business has been transacted.'" (*Swenson*, at p. 392.) The agreement at issue in *Swenson* restricted a departing partner from providing services to any partnership client, or to a non-partnership client which had its principal office within a 20-mile radius of any partnership office. (*Id.* at p. 391.)

14

In light of this background, we do not find that the arbitration award, even if incorrect in its interpretation and application of section 16602, contravened an explicit legislative expression of public policy that undermined the presumption in favor of private arbitration. (*Ahdout*, at p. 38.) While there is undeniably an explicit legislative expression of public policy embodied in section 16600, section 16602 creates an exception to this policy, and that provision governed this case. There is no absolute public policy against the enforcement of a non-competition provision entered into by partners, consistent with section 16602. And the issue of whether or to what extent Paragraph 21A was enforceable under the section 16602 exception was the only question submitted to the arbitrator for a decision. This case is distinguishable from *Round Valley* or *Aguilar*, in that the arbitration award, even if legally erroneous, did not contravene a public policy indicating that certain issues not be subject to resolution by the arbitrator. (See *Jones*, at p. 410 [describing *Round Valley* and *Aguilar* as applying the exception "in circumstances where the court concluded legislative enactments expressly or impliedly created an impediment to the resolution of an issue by private contractual arbitration"].)

In addition, this case is unlike *Pearson*, in that the arbitrator's error, if any, did not deprive Gantman of a hearing on the merits of his claim. In contrast to *Pearson*, any arbitrator error did *not* "[misconstrue] the procedural framework under which the parties agreed the arbitration was to be conducted, rather than misinterpreting the law governing the claim itself." (*Pearson*, at pp. 679-680, fn. omitted.) Indeed, Gantman's argument is precisely that the arbitrator misinterpreted the law governing the claim itself.

This case is also unlike *Jordan* and *California Correctional Peace Officers*, in that the award, even if based on errors of law, does not override or directly conflict with a legislative action which set explicit boundaries on the subject matter of the arbitration or the permissible scope of the award. Unlike the arbitration award in *Jordan*, even if legally insupportable, the award itself—enforcing a non-compete among partners—was not against public policy or unauthorized. (*Jordan*, at pp. 451, 453.)

15

This case is further unlike *City of Palo Alto* because the arbitration award, even if incorrect, does not require the violation of a separate court order. But the court's reasoning in *City of Palo Alto* regarding the safe workplace public policy is applicable here. In *City of Palo Alto*, the court reasoned that under some circumstances, a city might reinstate an employee who had made threats of violence, without violating the public policy requiring employers to provide a safe workplace. There was no *absolute* public policy against reinstatement of an employee who had threatened violence. Similarly here, there is no absolute public policy against the enforcement of a restraint on competition agreed to among partners. The arbitrator's award interpreting Paragraph 21A and finding it enforceable under section 16602 is not necessarily incompatible with the public policy in favor of open competition.

In *Ahdout*, the court concluded the arbitrators' refusal to apply the prohibition on unlicensed contractor work mandated judicial review. The public policy intended to protect the public from the "hazards of shoddy construction work" was explicitly articulated by the Legislature, and courts had the final word on whether the provisions regarding unlicensed contractors applied. But here, while section 16600 embodies a similarly strict and well-established public policy, section 16602 is an exception to section 16600, and it was the provision at issue in this case.

The case before us therefore bears a closer resemblance to *Moncharsh.* As was the case in *Moncharsh*, we see nothing in section 16602 that suggests resolution by an arbitrator of the dispute between a partner and the partnership would improperly protect the public interest. As in *Moncharsh*, the validity and enforceability of Paragraph 21A under California law were contested issues submitted to the arbitrator for decision. His resolution of those issues is what the parties bargained for in the arbitration agreement. (*Moncharsh*, at p. 28; *Jones*, at p. 40.) The arbitrator was within his powers in resolving the questions presented to him. And, "[i]t is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision." (*Moncharsh,* at p. 28; *Jones, supra*, pp. 409-410.) The arbitrator may have erred in

16

interpreting or applying section 16602.  But he did not exceed his powers by acting in a manner "not authorized by the contract or by law."  (*Jordan,* at p. 443.)

## DISPOSITION

The trial court order vacating the arbitration award is reversed.  The matter is remanded to the superior court with directions to enter an order confirming the award. Appellant is awarded costs on appeal.


BIGELOW, P. J.

We concur:


FLIER, J.


GRIMES, J.


17

Court of Appeal, Second Appellate District, Division Eight - No. B259722

**S229081**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

SINGERLEWAK LLP, Plaintiff and Appellant,

v.

ANDREW GANTMAN, Defendant and Respondent.

_____

As recommended by the Court of Appeal pursuant to rule 8.1120(c) of the California Rules of Court, the Reporter of Decisions is directed to publish the opinion in the above-entitled matter in the Official Reports.

 

_____

*Chief Justice*