Filed 5/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELIZABETH CASTELO, | B311573 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV28608) |
| v. | |
| XCEED FINANCIAL CREDIT UNION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael L. Stern, Judge. Affirmed.

Rastegar Law Group, Farzad Rastegar, Douglas W. Perlman and Thomas S. Campbell for Plaintiff and Appellant.

Schimley Althouse and Paul F. Shimley for Defendant and Respondent.

_____

# INTRODUCTION

Elizabeth Castelo sued her former employer Xceed Financial Credit Union (Xceed) for wrongful termination and age discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)  The case was submitted to binding arbitration pursuant to the stipulation of the parties.  The arbitrator granted summary judgment in favor of Xceed on the ground Castelo's claims were barred by a release in her separation agreement.  The arbitrator rejected Castelo's assertion that the release violated Civil Code section 1668, which prohibits pre-dispute releases of liability in some circumstances.  Castelo moved to vacate the arbitration award, arguing the arbitrator exceeded his powers by enforcing an illegal release.  The trial court denied the motion to vacate and entered judgment confirming the arbitration award.

We affirm.  We review the arbitrator's ruling for clear error.  The arbitrator correctly ruled the release did not violate Civil Code section 1668.  Castelo signed the separation agreement after she was informed of the decision to terminate her but before her last day on the job.  At the time she signed, she already believed that the decision to terminate her was based on age discrimination and that she had a valid claim for wrongful termination.  The alleged violation of FEHA had already occurred, even though the claim had not yet fully accrued.  Accordingly, the release did not violate section 1668 because it was not a release of liability for future unknown claims.

## FACTUAL AND PROCEDURAL HISTORY

1. *Castelo's Termination and Separation Agreement*

Castelo was employed by Xceed as its Controller and Vice President of Accounting. In November 2018, Xceed informed Castelo her employment would be terminated effective December 31, 2018. On November 19, 2018, the parties entered into an agreement entitled "Separation and General Release Agreement" (Separation Agreement), in which, among other things, Xceed agreed to pay Castelo a severance payment in consideration for a full release of all claims, including "a release of age discrimination claims that she has or may have under federal and state law, as applicable."

Paragraph 2 provided that for the agreement "to become effective and enforceable," Castelo had to meet certain conditions, including the following: "As of the Employee's Separation Date, Employee must sign Exhibit 'A' to this Agreement reaffirming Employee's commitment to abide by the terms of this Agreement and effectuating a full release of claims through Employee's Separation Date," which was December 31, 2018.

Paragraph 4 provided: "In consideration of the provisions of this Agreement, including Employee's waiver and release of claims and the other promises of Employee set forth in the Agreement, [Xceed] will pay Employee the amount of . . . $137,334.00 less appropriate federal and state withholdings." The sum was to be paid in two installments, with $5,000.00 to be paid shortly after the expiration of a revocation period and the remaining $132,334.00 to be paid shortly after Castelo's separation date. The second payment was to be made only if Castelo "sign[ed] and d[id] not revoke the Reaffirmation of

3

Severance and General Release Agreement attached as Exhibit A."

The release extended to all claims known and unknown "arising directly or indirectly from Employee's employment with [Xceed] [and] the termination of that employment" including (among many other listed claims) "wrongful discharge[;] violation of public policy[;] . . . [and] violation of the California Fair Employment and Housing Act." The parties agreed to waive the protections of Civil Code section 1542.

Castelo and Xceed signed the Separation Agreement on November 19, 2018.

Attached as Exhibit A to the Separation Agreement was a document entitled "Reaffirmation of Separation and General Release Agreement" (Reaffirmation). The Reaffirmation recited that Castelo and Xceed had entered into the Separation Agreement dated November 19, 2018; that the Separation Agreement contemplated a complete release of all claims up to and including the effective date of November 19, 2018; and that Castelo had continued to work with Xceed as an at-will employee until Castelo's separation date of December 31, 2018. The Reaffirmation then stated: "[T]he intent of this Reaffirmation of Separation and General Release Agreement . . . is to effectuate a complete release of all claims of whatever kind or nature . . . while extending the timeframe of those releases up to and including the date of Employee's signature below."

The Reaffirmation further provided, in consideration of the mutual promises and agreements between the parties, Castelo "reaffirmed" the Separation Agreement. Further, "[i]n reaffirming the Agreement, [Castelo] covenants and agrees that she will not bring any action against [Xceed] . . . as a consequence

4

of any matter from the beginning of time up to and including the date of her signature below.  [¶] . . . Employee further understands and acknowledges that the complete release of all matters described in this Reaffirmation includes, but is not limited to, [all claims] . . . from the beginning of time up to and including the date of her signature below."

The Reaffirmation further stated:  "[Castelo] understands and agrees that provided (i) her Separation Date occurs no later than December 31, 2018[,] (ii) she is otherwise in compliance with the terms of this Agreement, (iii) she executes this Reaffirmation, and (iv) she does not revoke this Reaffirmation within the timeframe provided below, [Xceed] will pay [Castelo] the balance of the Separation Pay in the amount of . . . $132,334.00, less applicable withholdings, on the tenth . . . day after the expiration of the revocation period under this Reaffirmation."

It is undisputed Xceed management intended that Castelo would sign the Reaffirmation on the date of her separation. However, Castelo signed it on the same date she signed the main Separation Agreement, on November 19, 2018, and Xceed did nothing to correct that error.

Castelo remained employed by Xceed until December 31, 2018.  In January 2019, Xceed paid Castelo the remaining $132,334.00 and Castelo accepted the payment.  Castelo made no attempt to revoke the Separation Agreement or Reaffirmation at any time before or after receiving payment.

2. *Castelo's Lawsuit and Subsequent Arbitration*

On August 13, 2019, Castelo filed a complaint against Xceed alleging age discrimination and wrongful termination in violation of FEHA.  On October 3, 2019, the parties stipulated the

5

action would be submitted to binding arbitration pursuant to an arbitration agreement executed in 2013. The court then dismissed the action without prejudice but retained jurisdiction to enter judgment on any arbitration award.

The matter was submitted to binding arbitration before Hon. Enrique Romero (ret.). Xceed filed a response to Castelo's complaint alleging, among other things, Castelo's action was barred by the release. Xceed also filed a cross-complaint and first amended cross-complaint, asserting claims for (1) breach of the Separation Agreement and Reaffirmation; (2) unjust enrichment; (3) reformation; (4) declaratory relief; and (5) promissory estoppel.

The parties filed cross-motions for summary judgment, or, in the alternative, summary adjudication. Castelo sought summary judgment on Xceed's first amended cross-complaint and summary adjudication of Xceed's affirmative defense of release. Xceed sought summary judgment on the ground that the release barred Castelo's claims in their entirety.

Castelo argued that, under the plain language of the Reaffirmation, claims were released only to the extent they accrued on a date "up to and including the date of her signature," which was November 19, 2018. Castelo contended the wrongful termination claim was not within the scope of this release because the claim accrued on the date of her separation, which was December 31, 2018. Castelo further argued that even if the release could be construed as extending beyond the date of her signature to the date of her separation, the release could not be enforced because it was void under Civil Code section 1668, which, according to Castelo, prohibits any agreement which seeks to exempt a party from future statutory violations.

Xceed argued undisputed extrinsic evidence established that the parties intended the release to extend to claims that accrued as of the date of Castelo's separation and that applying the release to Castelo's claims would not violate Civil Code section 1668.

The arbitrator considered the extrinsic evidence submitted by the parties and ruled the parties intended the release to extend to all claims that accrued through December 31, 2018. The arbitrator further concluded that applying the release to claims that accrued after the date of signing would not violate Civil Code section 1668. Accordingly, on December 4, 2020, the arbitrator granted summary judgment in favor of Xceed and against Castelo on all claims in Castelo's complaint and issued an award in Xceed's favor.

As to the contract interpretation issue, the arbitrator concluded that there was no material conflict in the extrinsic evidence and that the arbitrator could thus interpret the contract as a matter of law. Further, the undisputed extrinsic evidence revealed a latent ambiguity in the language of the Reaffirmation and made clear the parties intended the release to extend to Castelo's separation date. Specifically, the parties "intended the phrases 'the date of her signature below' and 'the date of [Castelo's] signature below' in the Reaffirmation to mean only one thing: the 'Separation Date' of December 31, 2018," and not the date that Castelo actually signed the document.

The arbitrator explained the basis for this conclusion at length. Among other things, the arbitrator reasoned: "[T]he objectively-manifested intent of the Agreement was for Castelo to release all claims as of the date of signature (defined as the 'Effective Date' in the Agreement) in exchange for the payment of

7

$5,000.00, and then *extend* that release through the Separation Date, December 31, 2018, for an additional $132,334.00.  Indeed, the third recitation of the Reaffirmation *expressly* announces the parties' intent to 'extend[] the timeframe' of the releases  in the Separation Agreement.  This is consistent with the intent testified to by Xceed's principals and employees.  If the Agreement truly contemplated that she would execute both on the same date, the Reaffirmation Agreement (and numerous provisions of the Separation Agreement) would be superfluous."  Further, Castelo had testified in her deposition that at the time she signed the agreements, she knew she was being wrongfully terminated based on age discrimination and that the Separation Agreement and Reaffirmation contained releases of wrongful termination and age discrimination claims.

The arbitrator then turned to whether the release, as interpreted, violated Civil Code section 1668 because Castelo executed the release before the claim for wrongful termination had fully accrued.  The arbitrator stated:  "Civil Code section 1668 provides that '[a]ll contracts which have *for their object*, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.' [Citations.] . . . [¶]  Even assuming arguendo that Castelo's claim for wrongful termination did not accrue until her termination on December 31 and that the release affects the 'public interest,' this argument gains no traction.  The Agreement did not have, as its *purpose*, the immunization of Xceed from liability for a *future* violation of law.  Rather, it clearly intended to, on December 31, 2018, effect the release of claims which had accrued on or before that date (i.e., an accrued

8

claim for wrongful termination, and any other employment-related claim Castelo could bring). The Arbitrator declines to permit Castelo—who accepted the benefits under the Reaffirmation—to use her mistakenly-premature execution of the Reaffirmation to leverage this statute as a weapon against Xceed." (Italics in original.)

The arbitrator noted: "If the Arbitrator did not reach this conclusion, then in the interest of justice and pursuant to his interpretation of the release, he would have reformed the Agreement as requested . . . which would negate this defense to the release."

### 3. *The Trial Court's Denial of the Motion To Vacate and Entry of Judgment Confirming the Arbitration Award*

On December 22, 2020, Xceed filed a petition to confirm the arbitration award. On January 13, 2021, Castelo filed a petition to vacate the award. Castelo argued the arbitrator exceeded his authority by giving effect to a contract that was illegal under Civil Code section 1668. On February 4, 2021, the trial court granted the petition to confirm the award and denied the petition to vacate.

The court stated: "One of the statutory grounds to vacate is the arbitrator exceeded his powers because the contract upon which the award was based is illegal." The court concluded the issue of illegality was for the trial court to decide and "any preliminary determination of legality by the arbitrator, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, should not be held to be binding upon the trial court."

9

The court then reasoned: "Public policy disfavoring attempts by contract to limit liability for future torts finds expression in Civil Code section 1668, which prevents a party to give itself permission, through a release, to engage in future unlawful conduct. . . . [¶] The settlement agreement at issue, and the release contained therein, did not have, as its purpose, the immunization of Xceed from liability for a future violation of law. Rather, it released claims which had accrued on or before that date such as the accrued claim for wrongful termination and any other employment-related claim Castelo could bring. [¶] Therefore, this Court does not find that the contract upon which the arbitration award is based to be illegal. As such, the arbitrator did not exceed his powers."

The court entered judgment confirming the arbitration award on February 16, 2021. Castelo filed a timely notice of appeal on February 26, 2021.

## DISCUSSION

Castelo does not challenge the arbitrator's interpretation of the release in the Reaffirmation as extending to claims that accrued as of the date of Castelo's separation. Instead, Castelo contends the release, as interpreted and applied by the arbitrator, violates Civil Code section 1668 because it purported to release claims that accrued after Castelo signed the document. Castelo claims that the arbitrator exceeded his authority in giving effect to the illegal release and that this court must review the arbitrator's and trial court's decisions de novo.

10

1. *Whether the Arbitrator's Decision That the Release Did*
      *Not Violate Civil Code Section 1668 Is Reviewable and,*
      *If So, What Standard of Review Applies*

The parties disagree as to the proper scope of our review. "Where, as here, an arbitrator has issued an award, the decision is ordinarily final and thus 'is not ordinarily reviewable for error by either the trial or appellate courts.' [Citation.] The exceptions to this rule of finality are specified by statute. As relevant here, the [California Arbitration Act (CAA)] provides that a court may vacate an arbitration award when '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' (Code Civ. Proc., § 1286.2, subd. (a)(4))." (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 72 (*Sheppard, Mullin*).) "[T]he question whether the arbitrator exceeded his powers and thus whether the [appellate court] should vacate his award on that basis is generally reviewed on appeal de novo." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1 (*Richey*).)

Castelo asserts an arbitrator exceeds his or her powers under Code of Civil Procedure section 1286.2 any time an arbitrator enforces an illegal provision in a contract. This is incorrect. A "contention that the parties' contract or transaction was illegal provides a ground for judicial review of the arbitration award only where the party claims the entire contract or transaction is illegal, not just one provision of the contract." (*SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 616.)

Here, Castelo does not claim the entire Separation Agreement and Reaffirmation is illegal. She does not seek to rescind the agreement and does not propose she return the

11

$137,334.00 she received as consideration. Rather, she seeks to invalidate only the release, and only to the extent the arbitrator applied the release to claims that accrued on or after the date of its execution. Castelo's argument that the arbitrator's decision is subject to judicial review simply because the release is alleged to be illegal thus fails.

Nonetheless, there are "'some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights.'" (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 77 [explaining and reaffirming the holding in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1].) More generally, even outside the context of an illegal contract, in certain limited and exceptional circumstances, "[a]rbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey, supra*, 60 Cal.4th at p. 916.)

One example of when this occurs is when an arbitrator commits a "clear error of law" that prevents a party from obtaining a hearing on the merits of a FEHA claim. Specifically, when "an employee subject to a mandatory employment arbitration agreement is unable to obtain a hearing on the merits of [the employee's] FEHA claims, or claims based on other unwaivable statutory rights, because of an arbitration award based on legal error, the trial court does not err in vacating the award. Stated in other terms, construing the CAA in light of the Legislature's intent that employees be able to enforce their right

12

to be free of unlawful discrimination under FEHA, an arbitrator whose *legal error has barred an employee* subject to a mandatory arbitration agreement *from obtaining a hearing on the merits* of a claim based on such right has exceeded his or her powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4), and the arbitrator's award may properly be vacated." (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 680, italics added.)

In *Pearson*, the arbitrator committed a "clear error of law" by failing to give effect to the tolling provision in Code of Civil Procedure section 1281.12 and erroneously concluding that the plaintiff's claims were time-barred. (*Pearson, supra*, 48 Cal.4th at pp. 673-676.) The court found this was a sufficient basis for vacating the arbitration award because the arbitrator exceeded his powers by depriving the plaintiff of a hearing on the merits of his FEHA claim through a clearly erroneous ruling. (*Id.* at pp. 675-680.) "[*Pearson's*] legal error standard d[oes] not mean that all legal errors are reviewable," but is narrowly applicable where the alleged legal error kept a plaintiff from receiving a hearing on the FEHA claim's merits. (*Richey, supra,* 60 Cal.4th at p. 918.)

Neither party addresses *Pearson*. However, Castelo argues, in effect, that she was deprived of a hearing on the merits of her FEHA claim because the arbitrator enforced a release that was illegal under Civil Code section 1668. The arbitrator's ruling in this case (that the FEHA claim was barred by the release) has the same effect as the arbitrator's ruling in *Pearson* (that the FEHA claim was barred by the statute of limitations); in each case, the arbitrator ruled in favor of the defendant without reaching the merits of the discrimination claim. The alleged

13

error here should thus be subject to same standard of review as the alleged error in *Pearson*.

Under *Pearson*, the arbitrator's ruling that deprived the claimant of a hearing on the FEHA claim is reviewed by the appellate court for clear legal error. (*Pearson, supra*, 48 Cal.4th at p. 680; see also *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 817 ["[A]n award may be vacated where an arbitrator commits clear legal error which denies a litigant a hearing on an unwaivable important statutory right."].) The trial court's order denying the motion to vacate is reviewed de novo. (*Richey, supra*, 60 Cal.4th at p. 918, fn. 1.) We thus review the arbitrator's decision to determine whether the arbitrator committed clear legal error in concluding that the release was not barred by Civil Code section 1668.

2. *Whether the Arbitrator Committed Clear Legal Error by Concluding That the Release Did Not Violate Civil Code Section 1668*

Civil Code section 1668 (section 1668) provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

Courts have not applied this statute literally but have interpreted it to give effect to its purpose and to promote public policy. (See, e.g., *Farnham v. Superior Court* (1997) 60 Cal.App.4th 69, 74 [despite its language suggesting otherwise, statute does not bar "contractual indemnity or insurance, notwithstanding that (aside from semantics) the practical effect of both is an 'exempt[ion]' from liability for negligence"]; see also

14

*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 755 [statute does not bar general releases of future claims for ordinary negligence when the "'exculpatory provision'" does not "'involve [and impair]' the public interest"].)

The purpose of the statute is to prohibit parties from granting themselves licenses to commit future aggravated wrongs (or future negligent acts when certain public policies are implicated). (*City of Santa Barbara v. Superior Court, supra,* 41 Cal.4th at p. 755.) Courts have therefore held the statute does not prevent parties from agreeing to settle disputes or to release claims relating to past conduct. (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1587-1588, fn. 12 ["[T]his provision is meant to prohibit contracts releasing liability for *future* torts [citation] not to prohibit settlements of disputes relating to past conduct."]; accord, *Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 935 (*Daneshmand*).)

Consistent with the purpose of the statute, courts have interpreted section 1668 as precluding releases of liability only for *future* violations of law, that is, where the facts giving rise to the offense have not yet occurred. (*Daneshmand, supra,* 60 Cal.App.5th at 935; *SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152 (*Variel)* ["The statute prohibits exculpation from future torts."]; *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 43 ["[T]he public policy disfavoring attempts by contract to limit liability for future torts . . . finds expression in section 1668."]; *Watkins v. Wachovia Corp., supra,* 172 Cal.App.4th at p. 1587, fn. 12 [section 1668 only applies to contracts that release liability for future torts]; *Health Net of California, Inc. v. Department of Health Services* (2003) 113 Cal.App.4th 224, 227 [section 1668 prevents a party from

15

imposing a contractual prohibition against the recovery of damages for any future violations of statutory or regulatory law].)[1]

Further, the doctrine generally applies to invalidate releases only when the provision at issue purports to contract away liability for future *unknown* claims, such as when a party is required to sign a pre-dispute release of liability against future unknown acts in order to obtain services from a provider. For example, the Supreme Court has held a release was void as against public policy when a hospital required patients, as a condition of admittance, to release the hospital from liability for future acts of negligence by employees. (*Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92.) Patients were required to execute the release before they received any treatment and before any negligent act had occurred. Accordingly, the patient had no way of knowing at the time of execution whether the hospital employees would act negligently or what the negligent acts would be.

Virtually all cases in which releases have been invalidated under section 1668 have arisen in similar factual scenarios, where the release is executed before a dispute has arisen between the parties or when the future claim is not known to the releasing party. (See, e.g., *City of Santa Barbara v. Superior Court, supra,* 41 Cal.4th at p. 757 [citing cases that have invalidated releases of

---

[1] Not all pre-dispute releases of future tort claims are invalid. Courts allow pre-dispute releases of future claims for ordinary negligence when the contract does not affect the public interest, such as in the recreational context. (See *Hass v. RhodyCo Productions* (2018) 26 Cal.App.5th 11, 28-29 [collecting cases].)

16

liability for future ordinary negligence; all cases involve pre-dispute releases of unknown future claims.]; *Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1501 [party who fraudulently induces a contract "cannot absolve himself or herself from the effects of his or her fraud" by a waiver of liability in the contract].)

Castelo has not cited a single case in which section 1668 was invoked to invalidate a release of a claim that was known to the releasor at the time the release was executed and after a dispute had already arisen between the parties, and our review has revealed none.

Here, at the time Castelo signed the Separation Agreement and Reaffirmation, Xceed had already made the decision to terminate her. Castelo already knew the basic facts that would later form the basis for her wrongful termination and age discrimination claims. Castelo testified that by the time of signing she already had concluded she was being wrongfully terminated and the wrongful termination was based on age discrimination. She already understood she had (or would have as of the date of her separation) claims for those wrongful acts. She already understood that her "job [was] gone" and therefore she was focused on the money she would get as a severance payment. She knew that her last day on the job would be December 31, 2018. She agreed to accept, and did accept, a payment of $137,334.00 to release those claims, including wrongful termination and age discrimination, which are specifically identified in the agreement. Castelo made no attempt to revoke the agreement either before or after receiving payment.

Castelo's claims all arise out of, or flow from, the decision to terminate that is embodied in the Separation Agreement.

17

Castelo does not allege Xceed engaged in any new, independent acts of discrimination after the date she signed. Castelo's actual discharge in December flowed inextricably from the decision made and communicated to Castelo before she signed the agreement in November. Because Castelo knew the facts underlying her claims at the time she entered into the agreement, the release does not implicate the policies that have led courts to invalidate releases under section 1668. The separation agreement includes a settlement of her existing (albeit not yet fully accrued) wrongful termination claim, not a release of future unknown claims.

Castelo argues the release improperly exonerates Xceed for future conduct because a cause of action for wrongful termination does not accrue until the date of termination and thus any release executed before that date necessarily constitutes a waiver of a future violation of the law. Castelo is correct that a claim for wrongful termination does not accrue for statute of limitations purposes until the employee is actually discharged, and that Castelo's claim had not accrued at the time she signed the release. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479 (*Romano*).) But that does not necessarily mean the release violates section 1668.

In *Romano*, the court gave several reasons for its conclusion that a wrongful discharge claim accrued for statute of limitations purposes at the time of discharge and not at the time the employee was unequivocally informed he or she would be discharged on a date certain in the future. First, the actionable adverse employment decision in a wrongful discharge case is the actual discharge, not the communication of the decision. (*Romano, supra,* 14 Cal.4th at pp. 492-493.) Second, concluding

18

that the statute of limitations runs from the time of discharge "has the obvious benefit of simplicity" because, unlike the date of notification, the date of discharge is not likely to be the subject of dispute. (*Id.* at p. 494.) Third, a holding that a wrongful discharge claim accrues at termination would eliminate the need for an employee to file a suit while he or she was still employed, when the employer could still change its mind. (*Ibid.*) By contrast, "a holding that the statute of limitations on a claim under the FEHA runs from the time of notification of termination would promote premature and potentially destructive claims, in that the employee would be required to institute a complaint . . . while he or she still was employed, thus seeking a remedy for a harm that had not yet occurred. . . . [S]uch a rule would reduce sharply any chance of conciliation between employer and employee." (*Ibid.*)

But these reasons for holding that the claim does not accrue until the date of separation do not support a conclusion that an employee should not be permitted to *release* or *compromise* claims arising out of an impending termination at an earlier time. The Supreme Court recognized as much in *Romano, supra,* 14 Cal.4th 479. The employer had argued the accrual rule ultimately adopted by the court would "represent[ ] poor public policy" because it would "discourage employers from providing advance notice or other severance benefits . . . to cushion the economic blow of employment termination. [The employer argued], too, that such a rule would be unfair because it would permit employees 'to have their cake and eat it too'—to retain severance benefits and wait to sue until actual termination." (*Id.* at p. 500.)

19

In response to this argument, the court said it did not "believe it [is] likely that such a rule will discourage employers from offering generous severance packages. We perceive minimal connection between severance benefits and the statute of limitations, apart from a hope on the part of the employer that the severance package will forestall any claim of wrongful termination. If the employer's object in offering such a package is, as [the employer] suggests, to purchase exoneration from any claim of wrongful termination, such an object may be secured directly through an express agreement in which the employee waives any potential claims." (*Romano, supra*, 14 Cal.4th at p. 500.)

In so ruling, the court implicitly recognized the public policy benefits of allowing an employer to offer severance benefits in exchange for a release of a wrongful termination claim when the decision to terminate is made before the actual termination date. (*Romano, supra,* 14 Cal.4th at p. 500.) As previously noted, courts have interpreted section 1668 to give effect to its underlying policies; there is no reason to interpret the statute to prevent employers from offering severance benefits before an employee's last day on the job or to prevent employers from conditioning the payment of benefits on the release of wrongful termination claims based on the decision to terminate that had already occurred.

Castelo further argues that *Variel, supra,* 29 Cal.App.5th at page 148 compels the conclusion that section 1668 prohibits the release of a statutory claim before the claim had fully accrued. But *Variel* does not purport to address a situation when the claims to be released are known to the releasing party. Further, the language that Castelo relies on is dicta.

20

In *Variel*, the plaintiff was the assignee of a buyer of a commercial building that had recently been improved. In the purchase agreement, the buyer had released certain claims regarding the condition of the building, including claims arising out of construction errors, omissions or defects. (*Variel, supra,* 29 Cal.App.5th at p. 149). After the close of escrow, the buyer's assignee discovered problems with the building and sued the seller and general contractor for negligence and negligent misrepresentation. (*Id.* at p. 150.) On demurrer, the defendants contended that the claims were barred by the release. The plaintiff did not dispute that the claims fell within the scope of the release but argued that the application of the release was barred by section 1668. (*Ibid.*) The trial court sustained the demurrer, concluding that section 1668 did not bar the release. (*Ibid.*)

On appeal, the court upheld the trial court's decision that section 1668 did not invalidate the release of the claim for negligence because the claim had already accrued by the time the release was signed. The court stated section 1668 prohibited releases only for future or concurrent torts, not for torts that had already occurred. (*Variel, supra*, 29 Cal.App.5th at pp. 152-153.) The claim had already accrued because the alleged negligence had already given rise to "some form of economic or physical damage"; the fact that more damage could later occur was irrelevant to the question of whether the release was effective. (*Id.* at p. 148.)

In analyzing the application of section 1668 to the negligence claim, the court considered whether section 1668 would ever apply to releases of torts that had already accrued prior to the execution of the release. The court reviewed cases

21

holding that a contracting party cannot escape liability for fraudulent inducement by inserting a release of liability into the fraudulently induced contract. (*Variel, supra,* 29 Cal.App.5th at pp. 152-153.) The court concluded that those cases did not involve past torts because even though the misrepresentations occurred prior to signing, the elements of reliance and damages "cannot possibly be past events." (*Id.* at p. 153.) "We are not aware of any case law applying section 1668 to torts where all elements are past events. Under these circumstances, we follow the weight of authority recognizing that section 1668 applies only to concurrent or future torts." (*Ibid.*)

The court summarized its holding as follows: "In affirming [the court's order sustaining the demurrer], we hold that section 1668 negates a contractual clause exempting a party from responsibility for fraud or a statutory violation only when all or some of the elements of the tort are concurrent or future events at the time the contract is signed. Contrariwise, we hold that section 1668 does not negate such a clause when all the elements are past events. Regarding the element of damages, which is necessary for tort liability, this means that at least some form of economic or physical damage has occurred." (*Variel, supra*, 29 Cal.App.5th at p. 148.)

Castelo relies on that language to support her assertion that section 1668 bars the release of any statutory claim that had not fully accrued by the time the release is executed. However, since the facts underlying each of the elements of the negligence claim at issue in *Variel* had already occurred at the time the release was signed, the language regarding future or concurrent torts was dicta. The court did not have the occasion to consider whether and to what extent section 1668 barred releases of

22

claims that had partially accrued at the time of execution because the negligence claim had already *fully* accrued.

Moreover, *Variel* has no relevance to whether and to what extent section 1668 applies to future claims that had partially accrued and are known to the releasor at the time the release is signed. The language Castelo relies on arose in the court's discussion of cases involving the fraudulent inducement of contracts that include releases for all claims of fraud. Courts have concluded such releases are invalid. In those cases, the misrepresentations were made before the agreements were signed, but the releasing parties did not know the misrepresentations were false. That situation is entirely different from the one here, where Castelo already believed she was being wrongfully terminated when she signed the release.

Thus, contrary to Castelo's argument, *Variel* does not stand for the proposition that parties cannot agree to compromise claims for wrongful termination after the decision to terminate is made and communicated to the employee but before the employee's last day on the job.

For the foregoing reasons, we conclude the arbitrator did not commit clear legal error in enforcing the release and the trial court did not err in denying the motion to vacate. The arbitrator's enforcement of the release did not violate section 1668 because Castelo signed the release after the allegedly discriminatory decision was made and after Castelo had already concluded that she was being wrongfully terminated because of age discrimination. Castelo did not revoke the release after the date of her discharge but instead accepted the consideration for which she had bargained. Enforcement of the release does not undermine the policies underlying section 1668

and promotes the strong public policy in favor of settling disputes.

## DISPOSITION

The judgment of the trial court is affirmed. Xceed is to recover its costs on appeal.


ESCALANTE, J.[*]

We concur:


PERLUSS, P. J.


SEGAL, J.

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.